IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 4:15-CR-194** |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **BRIAN KEITH ROBINSON,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

This court sentenced defendant Brian Keith Robinson to 216 months' imprisonment in October 2017, after he pled guilty to conspiracy to distribute 100 grams and more of heroin. Robinson moves *pro se* to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. We will deny Robinson's motion.

**I.     Factual Background & Procedural History**

A federal grand jury indicted Robinson, along with two codefendants, on September 10, 2015, for two drug charges: conspiracy to distribute 100 grams and more of heroin in violation of 21 U.S.C. § 846 (Count 1), and distribution of and possession with intent to distribute 100 grams and more of heroin in violation of 21 U.S.C. § 841(a)(1) (Count 2). The court appointed Attorney Roan J. Confer, Jr., Esquire, to represent Robinson. Roughly six months later, the government filed an information pursuant to 21 U.S.C. § 851, alleging Robinson had four prior convictions for felony drug offenses which, if proven, would increase the maximum penalty on the pending drug charges from 40 years' imprisonment to life and the mandatory minimum sentence from five years to ten years.

The parties eventually reached a plea agreement in which Robinson agreed to plead guilty to Count 1 in exchange for the government dismissing Count 2 and withdrawing the information. (See Doc. 96 ¶ 1). The parties also arrived at several stipulations pertaining to the United States Sentencing Guidelines. (See id. ¶ 12). They agreed Robinson's total offense level should be calculated at level 31 after applying a three-level reduction for acceptance of responsibility and that Robinson should be subject to a Guidelines sentencing range of 188 months to 235 months' imprisonment. (See id.) Importantly, the parties agreed Robinson qualified as a career offender under U.S.S.G. § 4B1.1(a) because he had at least two prior felony convictions for crimes of violence or controlled substance offenses. (See id.) The agreement acknowledged the court would decide Robinson's sentence and these stipulations were not binding on the court. (See id. ¶¶ 10, 12). The agreement also contained a conditional appeal waiver: Robinson waived his right to direct appeal if the court sentenced him at or below the bottom of the stipulated range but retained his appellate rights should the court impose a sentence above 188 months. (See id. ¶ 23).

The court conducted a change of plea hearing on February 17, 2017, with Robinson, Attorney Confer, and Assistant United States Attorney George J. Rocktashel present. During the hearing, the court engaged in an extensive colloquy with Robinson to ascertain whether he knowingly and voluntarily sought to plead guilty and waive his right to trial. Robinson represented to the court he read and understood the terms of the plea agreement. (See Doc. 145, 2/17/17 Tr. 6:11-7:1). Attorney Rocktashel reiterated the stipulations regarding the Guidelines as well as

2

the parties' understanding that the joint sentencing recommendation did not bind the court. (See id. at 8:18-9:13). The court explained to Robinson his maximum sentencing exposure, including the fact the court could sentence him to up to 40 years in prison. (See id. at 11:24-12:6). The court also emphasized for Robinson the sentencing range proposed by the Guidelines was merely advisory and his prior convictions could affect this range. (See id. at 12:18-25, 14:18-23). Additionally, the court conducted the following inquiry:

> THE COURT: Other than the terms that are set forth in your plea agreement, did anyone promise or offer you anything else in order to get you to plead guilty?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Have there been any threats to you or any member of your family that caused you or forced you to sign the plea agreement?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Do you understand that no one can guarantee you what sentence you will get from me?
>
> THE DEFENDANT: Yes, Your Honor.

(See id. at 10:15-25). At the conclusion of the colloquy, Robinson affirmed his desire to plead guilty, and the court determined Robinson was fully alert, competent, capable of entering an informed plea, and that his guilty plea was knowing, voluntary, and supported by an independent basis in fact. (See id. at 25:23-26:9). Accordingly, the court accepted Robinson's guilty plea. (See id. at 26:10-23).

The probation officer prepared a presentence investigation report ("PSR") which, *inter alia*, designated Robinson a career offender and applied an

obstruction-of-justice enhancement. (See Doc. 115 ¶¶ 20-29). The PSR denied Robinson a three-level reduction for acceptance of responsibility as generally precluded when a defendant receives an obstruction-of-justice enhancement. (See id. ¶¶ 22, 25, 28; see also Doc. 116 at 1)). Consequently, the PSR calculated his total offense level at 34, his criminal history category at VI, and his Guidelines range at 262 to 327 months. (See Doc. 115 ¶¶ 29, 46, 68). Attorney Confer filed a sentencing memorandum arguing Robinson deserved acceptance-of-responsibility credit despite the obstruction-of-justice enhancement and requesting a departure below the Guidelines range. (See Doc. 119). Confer discussed Robinson's career-offender status in the memorandum but did not object to the designation. (See id. at 6-7).

The case proceeded to sentencing on October 12, 2017. The court found a three-level acceptance-of-responsibility reduction appropriate. (See Doc. 129, 10/12/17 Tr. 23:23-24:3). Applying this reduction, the court determined Robinson's total offense level to be 31 with a resulting Guidelines range of 188 to 235 months, consistent with the parties' stipulation. (See id. at 24:4-9; Doc. 96 ¶ 12). The court denied Robinson's request for a departure and sentenced him to 216 months' imprisonment followed by a four-year term of supervised release. (See 10/12/17 Tr. 26:16-20, 32:9-13; Doc. 124). The government, per the plea agreement, dismissed Count 2 and withdrew the information.

Robinson invoked the conditional appeal waiver in the plea agreement and timely appealed his sentence. On appeal, Robinson's court-appointed counsel, Alison Brill, Esquire, argued this court erroneously found Robinson's prior Pennsylvania convictions under 35 PA. STAT. AND CONS. STAT. ANN. § 780-113(a)(30)

constituted predicate offenses for purposes of career-offender status. See United States v. Robinson, 763 F. App'x 213, 214 (3d Cir. 2019) (nonprecedential). Our court of appeals rejected Robinson's argument as foreclosed by United States v. Glass, 904 F.3d 319 (3d Cir. 2018), and affirmed his sentence, see Robinson, 763 F. App'x at 216 (quoting Glass, 904 F.3d at 323). Robinson did not file a petition for *certiorari*.

On February 28, 2020, Robinson filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Robinson elected to withdraw this initial motion in favor of a second, all-inclusive motion which he filed on June 8, 2020, after the court granted several extensions related to the COVID-19 pandemic. Robinson has since filed four motions seeking to amend his Section 2255 motion. The Section 2255 motion and related motions to amend are ripe for disposition.

## II.    Legal Standards

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. See 28 U.S.C. § 2255. Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, when "the sentence was imposed in violation of the Constitution or the laws of the United States." See 28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a). The statute provides, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." See 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous

based on the existing record." See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." See United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must demonstrate (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. See Strickland, 466 U.S. at 687-88. The defendant bears the burden of proving both prongs. See id. at 687.

To determine whether counsel satisfied the objective standard of reasonableness under the first prong, courts must be "highly deferential" toward counsel's conduct. See id. at 689. There is a strong presumption counsel's performance falls within the broad range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). To satisfy the prejudice prong, the defendant must establish a reasonable probability, but for counsel's errors, the outcome of the proceeding "would have been different." Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both

6

prongs of the inquiry if the defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

## III. Discussion

### A. Motions to Amend[1]

We first address Robinson's four motions to amend his Section 2255 motion. The Federal Rules of Civil Procedure govern amendment of habeas petitions. See Mayle v. Felix, 545 U.S. 644, 649 (2005) (citing 28 U.S.C. § 2242). Federal Rule of Civil Procedure 15(a) provides a party may amend its pleading once as a matter of course within 21 days after service of the pleading or service of a required responsive pleading, and otherwise by leave of court. See FED. R. CIV. P. 15(a). Courts should freely grant leave to amend barring certain exceptions. See United States v. Duffus, 174 F.3d 333, 337 (3d Cir. 1999) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Rule 15 aims to offer the "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." United States v. Thomas, 221 F.3d 430, 435 (3d Cir. 2000) (citation omitted). To this end, Rule 15(c) allows for new claims articulated in an amended pleading to "relate back" to the date of the original pleading for purposes of satisfying statutes of limitations when the new claim arises out of the same "conduct, transaction, or occurrence." See Mayle, 545

---

[1] Robinson handwrote most of his filings. Occasionally, he includes pagination on his documents which differs from the ECF pagination. For the sake of consistency and simplicity, we cite to the ECF pagination when referring to documents filed by Robinson.

7

U.S. at 648 (quoting FED. R. CIV. P. 15(c)).  This rule plays an important role in amending Section 2255 motions because, absent new evidence or a new rule of constitutional law, Section 2255(f) requires defendants to raise all claims for habeas relief within one year of their conviction becoming final.  See 28 U.S.C. § 2255(f).  Rule 15(c) operates to allow defendants to amend their Section 2255 motions to include additional claims outside of the one-year window when those claims are tied to the same "common core of operative facts" as the claims timely raised in their original motion.  See Mayle, 545 U.S. at 664; United States v. Santarelli, 929 F.3d 95, 101 (3d Cir. 2019) (citing Mayle, 545 U.S. at 664).

Robinson filed all four of his motions to amend more than 21 days after service of his Section 2255 motion and outside the one-year window set by Section 2255(f).[2]  In his first motion, Robinson seeks to support his ineffective-assistance claim by explaining one of his statements during the change of plea hearing.  (See Doc. 166).  His second and third motions seek to expand his ineffective-assistance claim to encompass additional arguments challenging the propriety of his career-offender designation.  (See Docs. 168, 175).  Robinson's fourth and most recent motion seeks to add a new claim for ineffective assistance of counsel related to the

---

[2] Robinson served his all-inclusive Section 2255 motion on the government on June 4, 2020.  He filed his motions to amend, respectively, July 29, 2020; March 14, 2021; July 23, 2021; and August 28, 2022.  (See Doc. 166; Doc. 168 at 5; Doc. 175 at 2; Doc. 197).  His one-year window for raising habeas claims closed on June 19, 2020.  (See Doc. 158 (extending Section 2255(f) deadline in light of significant limitations on law library access during height of COVID-19 pandemic)).

performance of Attorney Brill, his court-appointed appellate counsel. (See Doc. 197).

We have little difficulty granting Robinson's first motion. It relates directly to the claims he timely raised in his original motion, see Mayle, 545 U.S. at 664, and seeks only to clarify a factual ambiguity underlying one his legal arguments, see Duffus, 174 F.3d at 337 & n.6. Robinson's second and third motions present a closer question.[3] Out of an abundance of caution and conscious of our obligation to construe *pro se* motions liberally, we will grant these motions as well.

We are constrained, however, to deny Robinson's fourth motion. No matter how liberally we construe the motion, there is no way to read Robinson's challenge to Attorney's Brill's post-conviction appellate representation as relating back to his original motion, which concerned solely Attorney Confer's representation during the guilty-plea and sentencing phase of his proceedings before this court. See

---

[3] We read Robinson's original motion as alleging, *inter alia*, that Attorney Confer provided ineffective assistance by failing to object to Robinson's career-offender designation on the ground his prior convictions do not meet the Guidelines' definition of controlled substance offense. See *infra* p. 16 n.6. Robinson's second and third motions also relate to his career-offender status but put forward a new legal theory as to how his attorney erred. (See Doc. 168 at 1-3; Doc. 175 at 3-4). We conclude that these motions relate back to the same common core of operative facts as the claims in his original motion because they relate to the same alleged error by his attorney—not objecting to his career-offender status. See Mayle, 545 U.S. at 664. But it could also be said these motions raise a new claim which merely happens to concern the same phase of the criminal procedural process. See Wilkerson v. Superintendent Fayette SCI, 871 F.3d 221, 237 (3d Cir. 2017). As the arguments raised in Robinson's second and third motions are meritless in any event, see *infra* pp. 16-20, we assume relation back *arguendo* and dispose of them on the merits, see United States v. Underwood, 246 F. App'x 92, 94 & n.2 (3d Cir. 2007) (nonprecedential).

Wilkerson, 871 F.3d at 238 (holding claims do not relate back under Rule 15(c) when they differ in "time and type" (citing Mayle, 545 U.S. at 657)). Allowing Robinson to amend his petition to include an entirely new claim related to Attorney Brill would frustrate the one-year window set by Congress for challenging a conviction or sentence through Section 2255. See Duffus, 174 F.3d at 337.

### B. Section 2255 Motion

Robinson's Section 2255 motion, as amended, challenges two phases of his criminal proceedings before this court: the change-of-plea phase and the sentencing phase. He argues his counsel, Attorney Confer, provided ineffective assistance during the change-of-plea phase by misadvising him as to his potential sentencing exposure. He also suggests his guilty plea was not voluntary due to "threats" made by the government. Related to the sentencing phase, Robinson asserts Attorney Confer was ineffective for not objecting to Robinson's designation as a career offender. We will address Robinson's claims *seriatim*.

#### 1. *Change-of-Plea Phase*

##### a. Sentencing Exposure

Robinson and the government stipulated in his plea agreement that his Guidelines range would be 188 to 235 months' imprisonment. Robinson claims Attorney Confer assured him this range was merely window dressing and the court would not sentence him to more than 188 months in prison. (See Doc. 159-1 at 7-8, 10-11; Doc. 165 at 5, 7-8; Doc. 166-1 at 1-3). According to Robinson, he would have

10

chosen to go to trial had he realized the court could sentence him to more than 188 months.  (See Doc. 159-1 at 8, 13-14; Doc. 165 at 8).

In the context of a guilty plea, defense counsel must provide their client "enough information to make a reasonably informed decision" whether to accept the government's plea offer or to go to trial.  United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015) (quoting Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013)) (internal quotation marks omitted).  Potential sentencing exposure is an "important factor" in this decision-making process.  See id. (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)).  Our court of appeals has long held, however, "that an erroneous sentencing prediction by counsel is not ineffective assistance" so long as the district court conducts "an adequate plea hearing."  See United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (collecting cases).  An adequate plea hearing, in this respect, is one which apprises the defendant both of his "maximum potential exposure and the sentencing court's discretion."  See id.  If it does, defense counsel's advice about what sentence they believe the defendant might receive is "irrelevant."  See id.

Robinson's plea agreement and guilty plea colloquy unequivocally demonstrate Robinson's decision to plead guilty was reasonably informed regardless of any inaccurate statements by Attorney Confer regarding Robinson's potential sentencing exposure.  The plea agreement explains the sentencing range agreed upon by the parties was not binding upon the court and the court could impose a sentence up to and including the statutory maximum sentence of 40 years.  (See Doc. 96 ¶¶ 1, 12-13, 17).  Robinson represented to the court he read and fully understood the terms of the plea agreement.  (See 2/17/17 Tr. 6:13-7:1).  Attorney

11

Rocktashel noted twice during his description of the plea agreement that the court retained authority to impose a sentence above 188 months, (see id. at 9:10-22, 10:3-5), and Robinson affirmed the accuracy of Attorney Rocktashel's description, (see id. at 10:12-14).  The court then informed Robinson, multiple times and in multiple different ways, that only the court could decide which sentence to impose, with the only limitation being the statutory maximum sentencing exposure.  (See id. at 10:23-25; see also id. at 11:3-7 (terms of plea agreement "are simply recommendations," court may reject those terms "and impose a sentence which is more severe than you may anticipate," and plea would still be binding); id. at 13:22-14:6 (court does not have to follow parties' recommendations and plea would still be binding if court rejects them); id. at 14:7-13 (error by counsel in estimating Guidelines range is not a basis to withdraw plea); id. at 14:18-23 (Guidelines sentencing range is strictly advisory and court retains authority to impose sentence more or less severe than what Guidelines suggest)).

On the record presented, it is inconceivable Robinson believed the court could not impose a sentence above 188 months when his plea agreement and the court expressly informed him a sentence greater than 188 months was possible.  See Shedrick, 493 F.3d at 300 & n.7.  If Attorney Confer gave Robinson incorrect advice, Robinson suffered no prejudice because the misadvice was corrected by the written

12

plea agreement and the court's change-of-plea colloquy.[4]  See Shedrick, 493 F.3d at 300.  Robinson has not met his burden to show ineffective assistance of counsel during the change-of-plea phase.  See Strickland, 466 U.S. at 687.

### b. Voluntariness

In addition to his ineffective-assistance claim, Robinson asserts his guilty plea was the product of coercion.  A defendant seeking collateral relief based on an allegation their guilty plea was involuntary faces a "heavy burden" because the change-of-plea hearing is specifically designed to ensure the voluntary nature of the plea.  See Lesko v. Lehman, 925 F.2d 1527, 1537 (3d Cir. 1991) (citing Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).  Robinson asserts he only agreed to the plea agreement offered by the government because the government filed an information pursuant to 21 U.S.C. § 851 stating Robinson had several prior convictions for drug-related offenses.  (See Doc. 159-1 at 8-9, 12; Doc. 166-1 at 1-3).  If the government established two of these prior offenses at trial, Robinson would have faced a mandatory minimum sentence of 10 years and a statutory maximum sentence of life.  See 21 U.S.C. § 841(b)(1)(B).  Robinson argues this "threat[]" of greater

---

[4] Robinson also suggests Attorney Confer failed to adequately advise him that his prior convictions might result in increased punishment or classification as a career offender.  (See Doc. 159-1 at 9-10; Doc. 165 at 3).  This argument fails for much the same reason as Robinson's argument related to his sentencing exposure.  The plea agreement specifically stipulated to Robinson's classification as a career offender.  (See Doc. 96 ¶ 12).  Attorney Rocktashel reiterated this agreement in Robinson's presence during the change-of-plea hearing.  (See 2/17/17 Tr. 8:23-9:2).  The court also informed Robinson his prior convictions could affect his sentencing range.  (See id. at 12:15-25).  Robinson could not have reasonably been unaware that his prior convictions might affect his Guidelines range nor surprised he was classified as a career offender.

punishment coerced him into pleading guilty. (See Doc. 159-1 at 8-9, 12; Doc. 166-1 at 1-3).

Robinson's contention is meritless and conclusively contradicted by the record. Robinson denied being subject to any threats during the change-of-plea hearing.[5] (See 2/17/17 Tr. 10:19-22). Robinson's "solemn declarations in open court carry a strong presumption of verity" and are "a formidable barrier" to obtaining collateral relief. See Blackledge, 431 U.S. at 74; see also United States v. James, 928 F.3d 247, 256 (3d Cir. 2019) (quoting Blackledge, 431 U.S. at 74). Even if the government did threaten Robinson with additional punishment if he failed to plead guilty, the government is not prohibited from leveraging more severe punishment as a means of encouraging a defendant to accept a proposed plea deal. See United States v. Goodwin, 457 U.S. 368, 377, 380 (1982) (citing Bordenkircher v. Hayes, 434 U.S. 357 (1978)); United States v. Paramo, 998 F.2d 1212, 1221 (3d Cir. 1993) ("[N]o due process violation occurs simply because a prosecutor threatens a defendant with more serious charges to induce a guilty plea." (citing Bordenkircher, 434 U.S. at 363-65)). This negotiating tactic is entirely permissible so long as the additional charge is "properly chargeable" (*i.e.*, supported by probable cause); the defendant is free to accept or reject the agreement; and the government's actions are not "based

---

[5] Robinson suggests in his first motion to amend that Attorney Confer provided ineffective assistance by advising Robinson to answer "no" to the court's question about threats. (See Doc. 166-1 at 1-3). But Attorney Confer's purported advice was correct: as we note *infra*, the government's election to seek an enhanced penalty under Section 841(b)(1)(B) does not violate the Due Process Clause or otherwise constitute coercion.

upon an unjustifiable standard such as race, religion, or other arbitrary classification." See Bordenkircher, 434 U.S. at 363-65 (citations omitted).

Nothing in the record indicates any misconduct by the government: Robinson's numerous prior convictions for drug crimes supported probable cause for seeking an enhanced penalty under 21 U.S.C. § 841(b)(1)(B), and Robinson does not argue otherwise, (see Doc. 115 ¶¶ 31-44). He also avers no facts implying he was somehow unable to freely accept or reject the government's proposal or that the government's conduct toward him was motivated by an impermissible factor. For these reasons, Robinson's contention he was coerced into pleading guilty is wholly incredible in the face of the established record. See Blackledge, 431 U.S. at 74 (citations omitted).

### 2. *Sentencing Phase*

Robinson asserts Attorney Confer was ineffective for not objecting to Robinson's designation as a career offender.[6] (See Doc. 159-1 at 11, 14-22; Doc. 168 at 1-3; Doc. 175 at 1-4). A defendant is a career offender under the Sentencing Guidelines when (1) "the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;" (2) "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense;" and (3) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." See U.S.S.G. § 4B1.1(a) (U.S. SENT. COMM'N 2018)). The Guidelines define "controlled substance offense" as

---

[6] The government argues United States v. Folk, 954 F.3d 597 (3d Cir. 2018), bars Robinson's arguments related to his career-offender status. (See Doc. 199 at 1-3). In Folk, our court of appeals held "an incorrect career-offender enhancement under the advisory Guidelines does not present a cognizable claim under 28 U.S.C. § 2255." See Folk, 954 F.3d at 604 & n.7, 610. Folk, however, addressed an attempt to challenge an erroneous career-offender designation directly; it did not address whether the failure to challenge an erroneous career-offender designation could constitute ineffective assistance of counsel under the Due Process Clause. See id. at 601 ("[Folk] does not assert that his sentence violates the Constitution or federal law."). Courts in our circuit, including our court of appeals, continue to entertain ineffective-assistance claims related to a defendant's career-offender status. See, e.g., United States v. Dominguez-Rivera, 810 F. App'x 110, 112-14 (3d Cir. 2020) (nonprecedential) (granting relief under Section 2255 when counsel failed to challenge career-offender status); Herd v. United States, No. CV 21-10482, 2022 WL 1115280, at *3 n.3, 5-7 (D.N.J. Apr. 14, 2022) (noting Folk does not bar ineffective-assistance claims related to career-offender status because such claims arise under the Sixth Amendment (citations omitted)). Robinson's arguments generally read as a direct challenge to his designation. (See Doc. 159-1 at 14-21; Doc. 168 at 1-3; Doc. 175 at 3-4). Nevertheless, he refers to Attorney Confer as being ineffective for not challenging the career-offender designation, (see Doc. 159 at 8; Doc. 159-1 at 11, 21-22), and clarifies in a subsequent brief that he intends to pursue his career-offender arguments as an ineffective-assistance claim. (See Doc. 201 at 1-2). Under the circumstances, we construe Robinson's motion as raising Sixth Amendment ineffective-assistance claims, and we reject the government's reliance on Folk.

16

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (U.S. SENT. COMM'N 2018).

The PSR identified Robinson as having four prior convictions in Pennsylvania for violating 35 PA. STAT. AND CONS. STAT. ANN. § 780-113(a)(30). (See Doc. 115 ¶¶ 36, 39, 40, 41). Section 780-113(a)(30) criminalizes "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance . . . or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." See Glass, 904 F.3d at 322 (quoting 35 PA. STAT. AND CONS. STAT. ANN. § 780-113(a)(30)). Robinson does not contest the accuracy of the PSR's description of his criminal record but posits two legal theories he believes Attorney Confer should have employed to challenge his status as a career offender.

First, Robinson reiterates the argument he presented on appeal: Section 780-113(a)(30) covers a broader range of conduct—specifically, solicitation and sharing of drugs—than what is encompassed by the Guidelines' definition of "controlled substance offense." (See Doc. 159-1 at 14-21); Robinson, 763 F. App'x at 215. Robinson acknowledges our court of appeals already rejected his argument, but, in essence, asks us to overturn its decision. (See Doc. 159-1 at 14-15). We cannot and will not. See United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014) ("[I]ssues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion." (citing United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)).

17

Second, Robinson argues his instant offense of conviction—conspiracy to distribute 100 grams and more of heroin—is not a "controlled substance offense" because it is an inchoate offense.[7]  (See Doc. 168 at 1-3; Doc. 175 at 3-4).  At the time of Robinson's sentencing on October 12, 2017, our court of appeals, giving deference to the commentary to U.S.S.G. § 4B1.2, held the definition of "controlled substance offense" included inchoate offenses such as attempt, conspiracy, or solicitation.  See United States v. Hightower, 25 F.3d 182, 187 (3d Cir. 1994); see also United States v. Nasir, 17 F.4th 459, 649 n.10 (3d Cir. 2021) (*en banc*) (defining "inchoate offense").  Two years after Robinson's sentencing, the Supreme Court of the United States decided Kisor v. Wilkie, 588 U.S. ___, 139 S. Ct. 2400 (2019), reducing the level of deference courts should give to agency interpretations of regulations.  See Nasir, 17 F.4th at 471 (citing Kisor, 139 S. Ct. at 2414-15).  The following year, our court of appeals employed the new deference regime set in Kisor to overturn Hightower and hold the language of U.S.S.G. § 4B1.2(b) unambiguously excludes inchoate offenses from the definition of "controlled substance offense."  See United States v. Nasir, 982 F.3d 144, 160 (3d Cir. 2020) (*en banc*).  The Supreme Court later vacated that decision and remanded for further consideration of a recent opinion on a related issue.  See United States v. Nasir, ___ U.S. ___, 142 S. Ct. 56 (2021).  On remand, our court of appeals once more arrived at the same conclusion—an inchoate crime

---

[7] Robinson also asserts his convictions under Section 780-113(a)(30) are inchoate offenses.  (See Doc. 168 at 3).  Our court of appeals has rejected this argument, holding "[Section] 780-113(a)(30) is not an inchoate drug crime."  See United States v. Dawson, 32 F.4th 254, 258-60 (3d Cir. 2022).

18

cannot qualify as a "controlled substance offense" under U.S.S.G. § 4B1.2(b). See Nasir, 17 F.4th at 472.

Robinson is correct he would not qualify as a career offender if he were sentenced under present case law because conspiracy is an inchoate offense, see Nasir, 17 F.4th at 649 n.10, and to be a career offender the defendant's instant offense must meet the definition of a controlled substance offense, see U.S.S.G. § 4B1.1(a)(2). But we reject any suggestion Attorney Confer's representation was constitutionally deficient because he failed to anticipate the Supreme Court's decision in Kisor or our court of appeals' subsequent decision in Nasir. Hightower was the controlling precedent at the time of Robinson's sentencing and squarely foreclosed any contention Robinson's conspiracy conviction did not support a career-offender designation. The earliest decision from which Robinson's present argument flows—Kisor—postdates his sentencing by more than a year and a half; indeed, the Supreme Court had not yet granted *certiorari* in Kisor at the time of Robinson's sentencing. It is axiomatic that defense counsel do not have a "general duty . . . to anticipate changes in the law," see United States v. Davies, 394 F.3d 182, 189 (3d Cir. 2005) (quoting Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)), and Robinson has not argued, much less established, that this is the "rare case" in which that rule would not apply, see id. (same).

The Sixth Amendment guarantees criminal defendants "reasonably effective assistance;" it does not promise "exceptional assistance." See Davies, 394 F.3d at 189-90 (internal quotation marks omitted) (first quoting Strickland, 466 U.S. at 687; and then Brown v. United States, 311 F.3d 875, 877 (8th Cir. 2002)). Robinson has

19

not met his burden to show Attorney Confer provided deficient representation during the sentencing phase of Robinson's criminal proceedings.[8] See Strickland, 466 U.S. at 687.

## IV.  Conclusion

For the above reasons, we will deny Robinson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  We will also deny a certificate of appealability, because Robinson has not "made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    August 21, 2023

---

[8] Robinson suggests in his motion he intends to bring an additional claim for ineffective assistance related to Attorney Confer's supposed failure to ensure the government fulfilled its obligation to hand over exculpatory evidence, (see Doc. 159 at 6), but does nothing to develop this claim in his supporting briefing or motions to amend.  Accordingly, we decline to consider this vague and conclusory allegation. See Thomas, 221 F.3d at 437 (citing United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988)).